UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| THOMAS MATTHEWS, | Case No.: 3:18-CV-711-GPC-NLS |
|---|---|
| Plaintiff, | |
| v. | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS [ECF No. 33];** |
| SAN DIEGO COUNTY BOARD OF SUPERVISORS, et al., CODE ENFORCEMENT AGENTS TERESA WILLIS & MICHAEL MURPHY; SAN DIEGO COUNTY TREASURE'S OFFICE, (all defendants sued in their individual and official capacity), | **ORDER DENYING PLAINTIFF'S REQUEST FOR A TEMPORARY RESTRAINING ORDER [ECF No. 41.]** |
| Defendants. | |

Before the Court is an ongoing dispute between pro se Plaintiff Thomas Matthews and Defendants, the County of San Diego ("County"), the County of San Diego Board of Directors, and a number of their employees ("the employee defendants") (collectively, "Defendants") arising from nuisance abatement actions brought against Plaintiff's property.

Two motions are currently before the Court. On January 25, 2019, Defendants filed a motion to dismiss Plaintiff's First Amended Complaint ("FAC"). (ECF No. 33.) That motion has been fully briefed. (ECF Nos. 35, 36.) On April 22, 2019, Plaintiff filed an emergency request for a temporary restraining order ("TRO") to enjoin the tax sale of

1

his property, scheduled for April 26, 2019. (ECF No. 41.) The Court ordered an expedited response from Defendants, and Defendants complied on April 23, 2019. (ECF No. 45.)

Pursuant to Civil Local Rule 7.1(d)(1), the Court finds the pending motions suitable for adjudication without oral argument. For the reasons explained below, Defendants' motions to dismiss will be **granted in part and denied in part**, and Plaintiff's request for a TRO to enjoin the impending sale of his property will be **denied.**

I. Background

  A. Factual Background[1]

The instant litigation concerns events ensuing after nuisance complaints were lodged against the property located at 5602 Trafalgar Road, El Cajon, CA 92109 (the "property"). In 2004, the County received complaints that solid waste was being stored on the property, in violation of several sections of the San Diego County Code of Regulatory Ordinances and the San Diego County Zoning Ordinance. The solid waste included "scrap wood, scrap metal, wood pallets, metal racking, cages, automotive parts/equipment, inoperative vehicles, trailer coaches, construction materials/equipment/vehicles/debris, broken/discarded appliances/furnishings, wiring/cables, plastic buckets/bins/containers, tarps, tubing, cardboard boxes, old machinery and parts, outside stored items, and debris strewn about." (ECF No. 33-1, at 4.) A number of administrative warnings were issued with respect to the property. Site inspections in later years further revealed storage of sixteen commercial vehicles, fourteen inoperative vehicles, large tractor trailers, trailer coaches, and old machinery and construction, and trash and debris. (*Id.* at 6.)

---

[1] Many of these factual recitations are based on documents proffered by Defendants in their request for judicial notice. Because the Court grants the request *infra*, judicially noticeable information is incorporated in the Court's discussion of the factual background.

Despite these notices, the waste and hazardous materials on the property remained on site. On May 13, 2014, a Notice and Order to Abate was posted on the property, and a copy was mailed to the property owner of record, a John M. Smith. (ECF No. 33-1, at 10.)

In response, Plaintiff, Mr. Smith's nephew, filed an administrative appeal of that abatement order. A hearing was held on May 13, 2014. At the hearing, the presiding County Hearing Officer questioned Plaintiff's standing to bring the appeal, noting that he was not the property owner of record for the property. (*Id.* at 12.) In response, Plaintiff represented that "he is a long term tenant of the property, having lived at the Trafalgar Road address for 21 years, and that he was appearing in place and stead of Mr. Smith, and had full legal authority to appear for and to bind the record property owner to the rulings of th[e] administrative tribunal." (*Id.*). At the conclusion of the appeal, the County Hearing Officer upheld the Notice and Order to Abate. (*Id.*)

After losing the administrative appeal, Plaintiff proceeded to file two actions in San Diego Superior Court contesting the abatement enforcement proceedings. (*Id.* at 21–32.) Both actions were filed in July of 2014 and claimed violations of Plaintiff's constitutional rights. The complaint for a preliminary injunction contains a signature line for John M. Smith, and a handwritten signature appears above it. (*Id.* at 28.) The Superior Court sustained the County's demurrer as to the initial complaint and denied the request for a preliminary injunction. (*Id.* at 34–43.)

On March 4, 2015, the County obtained an abatement warrant for the property which authorized any Code Enforcement Officer to enter "for the purpose of abating and removing any and all trash, junk, and broken/discarded appliances/furnishings . . . outside stored items and debris strewn about the property." (*Id.* at 15–16.) The abatement warrant was executed starting on March 4, 2015. (*Id.* at 18.) Advance Demolition was retained for clean up services. During the initial execution of the warrant, Code Enforcement Officer Teresa Willis discovered approximately 200 containers of unknown substances which required HazMat personnel to investigate; testing confirmed that some

containers held hazardous substances. (*Id.*)  In light of the extensive scope of the nuisance, Officer Willis requested and was granted a seven day extension of the existing abatement warrant to March 21, 2015. (*Id.* at 19.)  On April 7, 2015, Officer Willis signed a document titled "Schedule of Costs for Public Nuisance Abatement" which calculated the cost of abatement due as $114,835.10.  (ECF No. 1-3, at 1.)

The record demonstrates that at the end of abatement, 195 tons of solid waste had been removed from the property.  (ECF No. 1-5, at 1.)  At some point, the County assessed the cost of abatement as a lien against the property subject to San Diego Code of Regulatory Ordinance sections 16.212–215 (permitting unpaid abatement costs due to the County to be applied against the property as a lien, and for the amount of the costs to be added to the property tax bill).

Plaintiff filed an administrative appeal challenging the assessment of the abatement costs.  On June 4, 2015, a hearing was held wherein a San Diego County Hearing Officer denied Plaintiff's appeal.  (ECF No. 33-1, at 48–49.)  The hearing officer's order advised that "Appellant has a right to file a lawsuit challenging this decision within 90 days after this decision becomes final." (*Id.* at. 49.)

Plaintiff filed the present action on April 10, 2018.  On April 27, 2018, Plaintiff recorded the grant deeds giving him ownership of the property.  (*Id.* at 75–82.)  Prior to that point, John M. Smith was the owner of record, though it appears that Plaintiff has been receiving the County's tax bill for the property since approximately 2009.  (*See* ECF No. 28, at 49.)

Despite Plaintiff's early history of making tax payments for the property, it appears that Plaintiff defaulted on this endeavor at some point.  After the abatement costs were issued as a lien on the property and added to Plaintiff's property taxes, Plaintiff fell behind on his taxes.  In an effort to collect, the San Diego County Treasurer-Tax Collector's Office scheduled a tax sale of the property for May 4, 2018.  That sale was cancelled after Plaintiff filed for bankruptcy on April 30, 2018.  (ECF No. 45, at 4, 6.)  On September 10, 2018, Plaintiff's bankruptcy petition was dismissed pursuant to

Plaintiff's request. (ECF No. 45, at 4.) Thereafter, a notice was mailed out on March 11, 2019, informing Plaintiff that the property would be listed for sale at public auction on April 26, 2019. (*Id.* at 6.)

**B. Procedural Background**

Plaintiff amended his complaint on December 27, 2018. (ECF No. 28.) The FAC names the County, the County Board of Supervisors, several employee defendants, and Advance Demolition as defendants. Plaintiff's claimed causes of action are legion; he makes allegations under 42 U.S.C. § 1983, civil RICO (for wire and mail fraud), the Constitution, and asserts claims of perjury, and fraud, bad faith, and trespass, among others.

At base, all of Plaintiff's claims are premised on his contention that the abatement proceedings were null and void. The gravamen of Plaintiff's theory is that Defendants had full knowledge that Mr. Smith, the property owner of record until 2018, passed away in 2003, but nonetheless instituted and executed the abatement proceedings in his name. Plaintiff further asserts that Defendants were put on notice that Plaintiff was the true owner because he had been paying property taxes on the property. Naming Mr. Smith, then, evinced Defendants' nefarious plot to "collect an illegal debt by writing false claims against Plaintiff's real property by using a deceased person." (ECF No. 28, at 19.)

On January 25, 2019, Defendants filed a motion to dismiss based on state-law immunity, statute of limitations, and res judicata and collateral estoppel grounds. (ECF No. 33). Defendants opposed the motion (ECF No. 35) and Plaintiff filed a response. (ECF No. 36.) On April 22, 2019, Plaintiff filed a motion requesting a temporary restraining order to enjoin the sale of his property scheduled for April 26, 2019.

The Court addresses these two motions in turn.

**II. Defendants' motion to dismiss**

**A. Legal Standard for Rule 12(b)(6)**

A complaint must contain only a "short and plain statement of the claim showing that the pleader is entitled to relief," FED. R. CIV. P. 8(a)(2), not "detailed factual

allegations," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). But this rule demands more than unadorned accusations; "sufficient factual matter" must make the claim at least plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A party may thus move to dismiss for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). The motion may be granted only if the complaint lacks a "cognizable legal theory" or if its factual allegations do not support a cognizable legal theory. *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1122 (9th Cir. 2013). In making this context-specific evaluation, this court "must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party." *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). This rule does not apply to "'a legal conclusion couched as a factual allegation,'" *Papasan v. Allain*, 478 U.S. 265, 286 (1986), nor to "allegations that contradict matters properly subject to judicial notice" or to material attached to or incorporated by reference into the complaint. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988–89 (9th Cir. 2001). In addition, Rule 12(b)(6) does not immunize from scrutiny assertions that are "merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.), *opinion amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001).

**B. Judicial Notice upon a Rule 12(b)(6) motion**

In deciding a motion to dismiss, "courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Outdoor Media Group, Inc. v. City of Beaumont*, 506 F.3d 895, 899–900 (9th Cir. 2007) (citing *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007)). Rule 12(d) addresses the use of materials which are outside the pleadings in motions to dismiss under Rule 12(b)(6). FED. R. CIV. P. 12(d); *see also Olsen v. Idaho State Bd. of Medicine*, 363 F.3d 916, 922 (9th Cir. 2004). When such materials are presented, the motion is treated as one for summary judgment. *Olsen*, 363 F.3d at 922. However, certain additional materials may be considered without converting the motion to dismiss into a

motion for summary judgment. While a court is generally limited to the four corners of the complaint, the court may consider exhibits attached to the complaint, *see Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1989), and documents incorporated by reference into the complaint. *See Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002). Documents upon whose contents the complaint necessarily relies—even if the complaint does not explicitly allege their contents—and whose authenticity and relevance are uncontested, are considered incorporated by reference. *See Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010); *Knievel v. ESPN*, 393 F.3d 1068, 1076–77 (9th Cir. 2005). The court may, in addition, take into account material that is properly the subject of judicial notice. *Lee v. City of Los Angeles*, 250 F.3d 668, 688–89 (9th Cir. 2001). Judicial notice may be taken of a fact not subject to reasonable dispute because it either is generally known within the trial court's territorial jurisdiction, or can be readily determined from sources whose accuracy cannot reasonably be questioned. FED. R. EVID. 201(b).

In this case, Defendants have sought judicial notice of a number of documents pertaining to their efforts to abate Plaintiff's property, various court and administrative agency filings and decisions relating to the parties' ongoing dispute about the abatement, and a quitclaim deed and grant deed of the property recorded on April 27, 2018. (ECF No. 33-1.) That request is granted in full.

A court may take judicial notice of court filings and other matters of public record. *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006). Thus, Defendants' proffered documents—i.e., the abatement warrants against the property, the filings and opinions rendered in connection with Plaintiff's unsuccessful administrative appeals, the orders on his state-court suits and his application for a preliminary injunction—are properly considered by this court. *See, e.g.*, *Mechammil v. City of San Jacinto*, No. CV 1301380JGBSPX, 2013 WL 12204187, at *3 (C.D. Cal. Nov. 12, 2013), *vacated in part on other grounds*, 653 F. App'x 562 (9th Cir. 2016) (taking judicial notice of notices of pendency of nuisance abatement proceeding); *Hardy*

7

*v. Cty. of El Dorado*, No. CIV.S-07-0799RRBEFB, 2008 WL 268966, at *5 (E.D. Cal. Jan. 29, 2008) (taking note of abatement hearing transcripts and an order from the zoning administrator because "[j]udicial notice is properly taken of transcripts, orders and decisions made by other courts or administrative agencies"). The property deeds at issue are similarly subject to judicial notice. Both the quitclaim and grant deeds have reference numbers designated by the San Diego County Recorder indicating that they were in fact recorded. *Lee v. Wells Fargo Bank*, No. EDCV151313VAPKKX, 2015 WL 9269433, at *2 (C.D. Cal. Dec. 17, 2015) (taking judicial notice of quitclaim and grant deeds).

**C. Discussion**

Defendants have moved to dismiss the FAC in its entirety. Their arguments are threefold. First, defendants argue that they are immune from suit under state law; second, that Plaintiff's § 1983 claims are untimely and time-barred; and third, that Plaintiff's suit is barred by the principles of res judicata and collateral estoppel.

**1. Immunity**

Defendants claim that they are absolutely immune from all the FAC's allegations under various provisions of the California Government Code. They argue that sections 821.6, 821.8, and 815.2 absolve the Defendants of any liability arising from their execution of the abatement warrant. They also argue that sections 818.2, 821, 820.4, and 860.2 preclude Plaintiff's argument that the Defendants are liable for adding abatement costs to his property tax bill. For the below reasons, the Court will grant in part and deny in part Defendants' motion to dismiss because they are not absolutely immune from all of the allegations and claims articulated in the FAC.

**a. State law immunities do not apply to Federal causes of action**

As a first order of business, the Court disagrees with Defendants' claim that they are immune for all of the claims stated in the FAC based on state law immunity doctrines. In addition to state law claims, Plaintiff's FAC also invokes numerous federal causes of action, including Constitutional, civil RICO and § 1983 claims. It has been said in no

uncertain terms that state law immunities may not shield state and municipal employees from federal claims. To wit, courts have found that state law immunities do not extend to federal Constitutional claims, *see Rutledge v. County of Sonoma*, No. C 07-4274 CW, 2009 WL 3075596, at *6 (N.D. Cal. Sept. 22, 2009), RICO claims, *see State Comp. Ins. Fund. v. Khan*, No. SACV1201072CJCRNBX, 2012 WL 12887395, at *3 (C.D. Cal. Dec. 28, 2012), and civil rights claims, *see Buckheit v. Dennis*, 713 F. Supp. 2d 910, 923 (N.D. Cal. 2010). Thus, any state law immunities invoked by Defendants may not be used to shield them from any federal claims.

### b. Liability for the Execution of the Abatement Warrant

Defendants argue that California Government Code sections 821.6, 821.8, and 815.2 immunize them from any liability raising out of the execution of the abatement warrant. Upon close inspection, however, none of these provisions actually cover the Defendants' alleged actions in executing the abatement warrant—i.e., entering upon Plaintiff's property and removing his possessions.

The Court turns to the first statutory section invoked by Defendants. Section 821.6 states: "A public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause." CAL. GOV. CODE § 821.6. This provision, while adequate to bar actions predicated on the *institution* or *commencement* of an abatement proceeding, does not apply where "the tort complained of occurred *after* the judicial or administrative proceeding has been completed." *Ogborn v. City of Lancaster*, 101 Cal. App. 4th 448, 462–63 (2002); *see also Blankenhorn v. City of Orange*, 485 F.3d 463, 487-88 (9th Cir. 2007) (noting that the "principal function" of section 821.6 was to provide relief from malicious prosecution and also "extends to actions taken *in preparation* for formal proceedings" (emphasis added)).

In *Ogborn*, the court refused to bar liability against a county official who relied on an abatement warrant to remove plaintiffs from their home and to demolish their home

without giving them an opportunity to collect their belongings. Similarly, in this case, Defendants turn to section 821.6 to shield conduct post-dating the institution or commencement of abatement proceedings. As a matter of logic, abatement warrants do not issue until after the conclusion or cessation of abatement proceedings. As a result, any attempts to rely on section 821.6, which cloaks only official actions taken with respect to the institution or initiation of administrative proceedings, to justify actions taken in conformity with an abatement warrant, must be denied.

Next, the Court examines section 821.8, which Defendants ostensibly invoke to forestall Plaintiff's claim of trespass. Section 821.8 provides that public employees are "not liable for an injury arising out of his entry upon any property where such entry is expressly or impliedly authorized by law." CAL. GOV'T CODE § 821.8. Here, Defendants entered upon Plaintiff's property and removed his belongings subject to an abatement warrant that is contested by Plaintiff as null and void, *i.e.,* not authorized by law. (*See* ECF No. 28, at 14 ("Defendants trespassed against Plaintiff's property without probable cause or authority . . . . Defendants' entire scheme was done in bad faith . . . .")). Given the disputed legitimacy of the abatement warrant, the Court is unprepared, at this juncture, to grant section 821.8 immunity to Defendants on Plaintiff's claim of trespass. *Cf. Ogborn*, 101 Cal. App. 4th at 462 (granting immunity to officers under section 821.8 when the warrant in question "clearly authorized entry onto the Property and into the structures located there").

Finally, section 815.2, which extends immunity to the County for covered acts of its employees, cannot apply given that neither section 821.8 nor 821.6 apply to the employee defendants. *See* CAL. GOV'T CODE § 815.2 ("[A] public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability.").

### c. Liability for Adding the Abatement Costs to the Property Tax Bill

Plaintiff's FAC alleges that Defendants acted unlawfully by assessing the cost of abating Plaintiff's property as liens on his property, adding the abatement costs to his property tax bill, and taking steps to enforce the liens through a tax sale. Defendants claim that their actions fall squarely under the protective umbrella of section 860.2.

Section 860.2 provides immunity to public entities and public employees for "an injury caused by . . . . (a) Instituting any judicial or administrative proceeding or action for or incidental to the assessment or collection of a tax, . . . (b) An act or omission in the interpretation or application of any law relating to a tax." CAL. GOV'T CODE § 860.2. Defendants argue that no liability can issue from their application of the abatement costs to the property tax bill, since Cal. Gov't Code section 25845 and San Diego County Code of Regulatory Ordinance section 16.201 *et. seq.* provide that costs of abatement can give rise to liens on property in the amount of the assessment and may be collected at the same time and in the same manner as County taxes.

While section 860.2 looks facially applicable, the Court is not prepared to make a ruling on its applicability without a further development of the record. Here, Plaintiff's theory of liability is not that Defendants unlawfully applied the costs of abatement to his tax bill (indeed, Cal. Gov't Code section 25845 and San Diego County Code of Regulatory Ordinance section 16.201 give them this authority); rather, it is that Defendants included the abatement costs as a lien on the property despite their knowledge that the underlying abatement warrant was wrongfully issued after null and void abatement proceedings. "The burden is on the government to prove that immunity lies under these circumstances." *Weingarten v. Cty. of Santa Clara,* No. C 93-20783 RPA, 1994 WL 514022, at *3 (N.D. Cal. Sept. 12, 1994). However, Defendants did not squarely address in their motion to dismiss whether Plaintiff's claim was contradicted as a matter of fact, nor did they cite to any legal authority indicating that section 860.2 immunity may be invoked irrespective of an allegation of a defect in the underlying abatement proceedings. Because Defendants have the burden of proving their entitlement to immunity, *see Gibson v. Cty. of Riverside*, 181 F. Supp. 2d 1057, 1086 (C.D. Cal.

2002), the request for section 860.2 immunity must be denied, though Defendants may raise it again in a later motion.

### 2. Statute of Limitations

Defendants argues that Plaintiff's § 1983 claims are barred by the statute of limitations.

"For actions under 42 U.S.C. § 1983, courts apply the forum state's statute of limitations for personal injury actions." *Jones v. Blanas*, 393 F.3d 918, 927 (9th Cir. 2004) (citing *Fink v. Shedler*, 192 F.3d 911, 914 (9th Cir. 1999)). California has a two-year statute of limitations for personal injury actions. CAL. CIV. PROC. CODE § 335.1.

Defendants contend that Plaintiff's complaint, filed in 2018, lies outside of the two-year limitations period. They point out that the last of Defendants' allegedly unlawful actions occurred, at the latest, by the June 2015 administrative appeal hearing, which would mean that Plaintiff had to have brought suit no later than June 2017.

The Court agrees. Although Plaintiff alleges that his injuries from Defendants' actions are ongoing, the record indicates that the last action taken by any Defendants in this matter occurred in June 2015, and Plaintiff's 2018 lawsuit is tardy. *See Epps v. Grannis*, No. 10-CV-1949 BEN MDD, 2012 WL 1032344, at *1 (S.D. Cal. Mar. 27, 2012) (dismissing § 1983 claims pursuant to the statute of limitations because, although plaintiff alleged ongoing violations, such was "not evidenced from the face of the Amended Complaint"). Defendants' motion to dismiss shall be granted with respect to Plaintiff's § 1983 claims with leave to amend.

### 3. Res Judicata and Collateral Estoppel

Defendants argue that Plaintiff's claims are barred because they either had already been raised and denied in a previous administrative proceeding, or were waived because Plaintiff neglected to raise the challenge previously. (ECF No. 33-2, at 10-11.)

The Court agrees with Defendants' general principle that courts may give preclusive effect to legal and factual rulings of state administrative bodies. However, as

even Defendants' cited authorities recognize, there is a condition precedent for the application of res judicata and collateral estoppel.

"[T]he federal common law rules of preclusion . . . extend to state administrative adjudications of legal as well as factual issues, even if unreviewed, so long as the state proceedings satisfies the requirements of fairness outlined in [*United States v. Utah Constr. & Mining Co.*, 384 U.S. 394, 422 (1966)]." *Guild Wineries and Distilleries v. Whitehall Co.*, 853 F.2d 755, 758 (9th Cir. 1988). "The threshold inquiry . . . is whether a state administrative proceeding was conducted with sufficient safeguards 'to be equated with a state court judgment.'" *Miller v. Cty. of Santa Cruz*, 39 F.3d 1030, 1033 (9th Cir. 1994), *as amended* (Dec. 27, 1994) (quoting *Plaine v. McCabe*, 797 F.2d 713, 719 (9th Cir. 1986)); *see also Univ. of Tenn.*, 478 U.S. at 798 ("'Where an administrative forum has the essential procedural characteristics of a court, . . . its determinations should be accorded the same finality that is accorded the judgment of a court.'").

Courts have looked to a number of factors to ascertain whether an agency's proceedings are sufficiently judicial in nature, including whether opposing parties were presented, represented by counsel, and permitted to call, examine, and cross-examine witnesses. *See Plaine*, 797 F.2d at 720; *see also Eilrich v. Remas*, 839 F.2d 630, 634 (9th Cir. 1988) (holding that a hearing met the *Utah Construction* requirements because "both sides were entitled to call, examine and cross-examine witnesses under oath or affirmation. At the hearing, both parties were represented by counsel, twenty-one sworn witnesses testified, subpoenas were issued, and both parties presented oral argument and written memoranda.") Courts have also considered whether testimony was submitted under oath and whether a verbatim transcript was required, and whether the parties received a written decision setting forth the decision-maker's reasons for his or her decisions. *Plaine*, 797 F.2d at 720.

Here, Defendants have provided insufficient argument for why the County Administrative Hearing Officer's determination should be equated with a state court judgment. They argue only that the administrative proceedings advised Plaintiff that he

13

3:18-CV-711-GPC-NLS

had a "right to file a lawsuit challenging" the decision. (ECF No. 33-2, at 11.) Yet, the availability of judicial review—while certainly probative of the judicial nature of administrative proceedings—is not dispositive on its own. *See Miller*, 39 F.3d at 1038 ("[T]he availability of judicial review, even if not always determinative, is of critical importance here."). Indeed, it is not a foregone conclusion that abatement proceedings should be afforded preclusive effect: a district court recently addressed the County of Alameda's administrative abatement proceedings and held that it was not a "action" which could give rise to res judicata. *See Citizens for Free Speech, LLC v. Cty. of Alameda*, 338 F. Supp. 3d 995, 1008 (N.D. Cal. 2018) ("Res judicata bars only a second action. As noted, the County's administrative abatement proceeding is not an 'action.'").

Because the burden of proving the applicability of res judicata and collateral estoppel lies with the party invoking the doctrines, *Patel v. Crown Diamonds, Inc.*, 247 Cal. App. 4th 29, 40 (2016), Defendants' failure to establish the judicial nature of the prior administrative proceedings forecloses this avenue of defense.

### III. Plaintiff's motion for a TRO

#### A. Legal Standard

Federal Rule of Civil Procedure 65 authorizes a court to enter a temporary restraining order or preliminary injunction. FED. R. CIV. P. 65. The purpose of a TRO is to preserve the status quo before a preliminary injunction hearing may be held; its provisional remedial nature is designed merely to prevent irreparable loss of rights prior to judgment. *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers*, 415 U.S. 423, 439 (1974).

Temporary restraining orders are governed by the same standard applicable to preliminary injunctions. *See Cal. Indep. Sys. Operator Corp. v. Reliant Energy Servs., Inc.*, 181 F.Supp.2d 1111, 1126 (E.D.Cal.2001). To obtain a TRO or preliminary injunction, the moving party must show: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm to the moving party in the absence of preliminary relief;

(3) that the balance of equities tips in the moving party's favor; and (4) that an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

Under the Ninth Circuit's "sliding scale" approach, the first and third elements are to be balanced such that "serious questions" going to the merits and a balance of hardships that "tips sharply" in favor of the movant are sufficient for relief so long as the other two elements are also met. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134–35 (9th Cir. 2011). A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief," *Winter*, 555 U.S. at 22, and the moving party bears the burden of meeting all four *Winter* prongs. *See Cottrell*, 632 F.3d at 1135; *DISH Network Corp. v. FCC*, 653 F.3d 771, 776–77 (9th Cir. 2011).

**B. Discussion**

Plaintiff seeks to enjoin Defendants "from conducting the sale of Plaintiff's property . . . while the current case is pending." (ECF No. 41, at 1.)

Plaintiff has entirely defaulted on his burden of proving that a TRO should issue. For starters, Plaintiff's TRO motion is less than two pages long. It provides very few details on the relief requested—in fact, it does not even mention the date of the pending sale—the Court had to glean that information from the proposed order Plaintiff submitted simultaneous to his TRO motion. The TRO motion does not contain a separate statement of facts and is not accompanied by affidavits or other evidence.[2]

Even apart from its shocking brevity, there are two dispositive reasons why Plaintiff's TRO motion must fail. First, Plaintiff's motivating contention—that the underlying abatement proceedings are invalid—is flatly refuted by the record and is not likely to result in success on the merits. Second, Plaintiff's dilatory request sharply

---

[2] Plaintiff's motion purports to incorporate by reference a "memorandum in support and the declaration of THOMAS MATTHEWS filed herewith." (ECF No. 41, at 2.) However, no corresponding documents were included in Plaintiff's filings.

15

undercuts any finding of irreparable harm and marshals against a finding that the equities swing in his favor. The Court discusses these issues in turn.[3]

### 1. No Likelihood of Success on the Merits

First, Plaintiff has defaulted on his burden to prove a likelihood of success on the merits. As explained *supra*, the crux of Plaintiff's FAC is that Defendants fraudulently and in bad faith instituted abatement proceedings against Mr. Smith, the property owner of record, even though he had been deceased since 2003. Plaintiff's allegations—that the resulting abatement orders were null and void because they were entered without jurisdiction—necessarily rest on his ability to demonstrate that Defendants improperly proceeded against a deceased person and that Plaintiff was deprived of his due process rights to contest the abatement proceedings.

Judicially noticeable facts significantly undermine Plaintiff's claim that Defendants fraudulently and knowingly proceeded against a deceased person. First, Mr. Smith was the owner of record for the property until April 27, 2018, when Plaintiff finally recorded his ownership over the same. Second, Plaintiff himself consistently represented in abatement proceedings that he was but a long-term tenant at the property, and that he was appearing in Mr. Smith's place. Contrary to Plaintiff's assertions, at no point during the lengthy decade-long process of abating the property does it appear that Plaintiff ever advised Defendants that Mr. Smith was deceased.

Third, and most damningly, Plaintiff himself appears to have contributed to the illusion that John Smith was alive and very much party to the proceedings. To wit, Plaintiff filed a July 2014 complaint to the San Diego County Superior Court bearing not only his, but also John Smith's signature. For Plaintiff to execute an about face at this juncture and claim that Defendants willfully proceeded against a deceased person simply

---

[3] The Court notes that the County raised an additional argument under the Tax Injunction Act, (ECF No. 45, at 2.) However, because the two issues discussed in the main text are determinative of Plaintiff's TRO motion, the Court need not address the alternative argument.

defies logic and raises serious questions as to whether Plaintiff forged John Smith's signature in connection with the July 2014 lawsuit.

In any event, Plaintiff has been given ample notice that the County would move to abate the nuisance at the property. Plaintiff has no viable claim that he was not afforded with due process to contest the abatement, since the record is replete with evidence that Plaintiff abundantly availed himself of avenues—both administrative and legal—to challenge the County's attempts to abate.

Because all the claims in Plaintiff's FAC rise and fall with his claim that the Defendants proceeded fraudulently and knowingly against a deceased property owner, the effective refutation of that claim by judicially-noticeable facts dispels any likelihood of success on the merits.

**2. Unreasonable Delay in Seeking Injunctive Relief**

Under Ninth Circuit law, it is well-established that a "[p]laintiff's long delay before seeking a preliminary injunction implies a lack of urgency and irreparable harm." *Oakland Tribune, Inc., v. Chronicle Publ'g Co.*, 762 F.2d 1374, 1377 (9th Cir. 1985); *see also Garcia v. Google, Inc.*, 786 F.3d 733, 766 (9th Cir. 2015) (affirming district court's decision finding that a several-month long delay in seeking injunction "undercut Garcia's claim of irreparable harm").

Defendants argue that Plaintiff dallied in seeking injunctive relief and that he could have moved for a preliminary injunction at a much earlier juncture. They point out that a tax sale of the property had been scheduled for an auction on May 4, 2018. On April 30, 2018, on the eve of that tax sale, Plaintiff filed a bankruptcy petition, which imposed a stay over the pending proceedings. On March 11, 2019, months after the bankruptcy petition was dismissed, Plaintiff was sent a notice of tax sale informing him that the property would again be put up for sale at auction on April 26, 2019. Despite this notice, and two others mailed to Plaintiff in the intervening time, Plaintiff waited until the week before the scheduled auction date to request relief.

The Court agrees with Defendants that Plaintiff's last-minute request for a TRO is neither warranted nor excusable. Plaintiff has made no attempt to explain why he waited until the eve of the April 26, 2019 tax sale to seek an injunction, nor offered any justification for why he failed to request a preliminary injunction at any point since the initiation of the lawsuit in 2018. It has long been said that "equity aids the vigilant, not those who sleep on their rights." *Magic Kitchen LLC, v. Good Things Int'l Ltd.*, 153 Cal. App. 4th 1144, 1156 (2007) (citation and quotation marks omitted). Here, Plaintiff has not only slept on his rights, but has engaged in a pattern of making last-minute requests to stave off the payment of taxes long accruing. The Court holds that the second and third *Winter* factors weigh against Plaintiff.

### 3. The request for a TRO must be denied

Plaintiff has not met his burden of proving that a TRO should issue. Accordingly, Plaintiff's request for an MTO to enjoin the tax sale of his property is **DENIED**.

## IV. Conclusion

For the reasons detailed above, Plaintiff's motion for a temporary restraining order is **DENIED** (ECF No. 41), and Defendants' motion to dismiss is **GRANTED in part and DENIED in part**. (ECF No. 33.) If Plaintiff desires to submit an amended complaint to rectify the pleading deficiencies noted as to his § 1983 claims, he must do so no later than **May 22, 2019**. The motion hearing set for April 25, 2019 on Defendants' motion to dismiss is hereby **VACATED**.

Dated: April 24, 2019

Hon. Gonzalo P. Curiel
United States District Judge