UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS MATTHEWS,<br><br>         Plaintiff,<br><br>v.<br><br>SAN DIEGO COUNTY BOARD OF SUPERVISORS, et al., CODE ENFORCEMENT AGENTS TERESA WILLIS & MICHAEL MURPHY; SAN DIEGO COUNTY TREASURE'S OFFICE, (all defendants sued in their individual and official capacity),<br><br>         Defendants. | Case No.: 3:18-CV-711-GPC-NLS<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**<br><br>**[ECF No. 49];** |

  Before the Court is an ongoing dispute between pro se Plaintiff Thomas Matthews ("Plaintiff") and Defendants, the County of San Diego ("County"), the County of San Diego Board of Directors, and a number of their employees ("the employee defendants") (collectively, "Defendants") arising from nuisance abatement actions brought against Plaintiff's property.

  At issue is Defendants' June 6, 2019 motion to dismiss Plaintiff's Second Amended Complaint ("SAC"). (ECF No. 49.) The parties have fully briefed this motion. (ECF Nos. 49-1, 52, 53, 55, 56.) Pursuant to Civil Local Rule 7.1(d)(1), the Court finds

the pending motion suitable for adjudication without oral argument. For the reasons explained below, the Court **GRANTS** Defendants' motion to dismiss with prejudice.

**I. Background**

    **A. Factual Background**

The instant litigation ensues from the County's long-beleaguered efforts to abate a nuisance found at the property located at 5602 Trafalgar Road, El Cajon, CA 92109 (the "property").

In 2004, the County received complaints that solid waste was being stored on the property in violation of several sections of the San Diego County Code of Regulatory Ordinances and the San Diego County Zoning Ordinance. The solid waste included "scrap wood, scrap metal, wood pallets, metal racking, cages, automotive parts/equipment, inoperative vehicles, trailer coaches, construction materials/equipment/vehicles/debris, broken/discarded appliances/furnishings, wiring/cables, plastic buckets/bins/containers, tarps, tubing, cardboard boxes, old machinery and parts, outside stored items, and debris strewn about." (ECF No. 49-2, at 5.) Defendants issued several administrative warnings concerning the property. Site inspections in later years further revealed storage of sixteen commercial vehicles, fourteen inoperative vehicles, large tractor-trailers, trailer coaches, and old machinery and construction, and trash and debris. (*Id*. at 6.)

Despite these notices, the waste and hazardous materials on the property remained on site. On May 13, 2014, Defendants posted a Notice and Order to Abate on the property and mailed a copy to the property owner of record, a John M. Smith. (*Id.* at 10.)

Thereafter, Plaintiff, Mr. Smith's nephew, filed an administrative appeal of that abatement order. A hearing was held on May 13, 2014. At the hearing, the presiding County Hearing Officer questioned Plaintiff's standing to bring the appeal, noting that he was not the property owner of record. (*Id*. at 13.) In response, Plaintiff represented that "he is a long term tenant of the property, having lived at the Trafalgar Road address for 21 years, and that he was appearing in place and stead of Mr. Smith, and had full legal

authority to appear for and to bind the record property owner to the rulings of th[e] administrative tribunal." (*Id*.). After the appeal, the County Hearing Officer upheld the Notice and Order to Abate. (*Id*.)

After losing the administrative appeal, Plaintiff proceeded to file two actions in San Diego Superior Court contesting the abatement enforcement proceedings. (*Id*. at 21–32.) Both actions were filed in July of 2014 and claimed violations of Plaintiff's constitutional rights. Plaintiff's request for preliminary injunction contains a signature line for John M. Smith, and a handwritten signature appears above it. (*Id*. at 28.) The Superior Court sustained the County's demurrer as to the initial complaint and denied the request for a preliminary injunction. (*Id*. at 34–43.)

On March 4, 2015, the County obtained an abatement warrant for the property which authorized any Code Enforcement Officer to enter "for the purpose of abating and removing any and all trash, junk, and broken/discarded appliances/furnishings . . . outside stored items and debris strewn about the property." (*Id*. at 15–16.) The abatement warrant was executed starting on March 4, 2015. (*Id*. at 18.) Defendants retained Advance Demolition for clean-up services. As a result of this abatement, Code Enforcement Officer Teresa Willis discovered approximately 200 containers of unknown substances which required HazMat personnel to investigate. Testing confirmed that some containers held hazardous material. (*Id*.) In light of the extensive scope of the nuisance, Officer Willis requested and was granted a seven-day extension of the existing abatement warrant to March 21, 2015. (*Id*. at 19.) The record demonstrates that at the end of abatement, the County removed 195 tons of solid waste from the property. (ECF No. 1-5, at 1.)

On April 7, 2015, Officer Willis issued a document titled "Schedule of Costs for Public Nuisance Abatement" which calculated the cost of abatement due as $114,835.10. (*Id*. at 56.) Thereafter, the County assessed the cost of abatement as a lien against the property subject to San Diego Code of Regulatory Ordinance sections 16.212–215
3

(permitting unpaid abatement expenses due to the County to be applied against the property as a lien, and for the amount of the costs to be added to the property tax bill).

Plaintiff filed an administrative appeal challenging the assessment of the abatement costs. On June 4, 2015, a San Diego County hearing officer held a hearing and denied Plaintiff's appeal. (ECF No. 49-2, at 48–49.) The hearing officer's order advised that "Appellant has a right to file a lawsuit challenging this decision within 90 days after this decision becomes final." (*Id*. at. 49.)

Plaintiff filed the present action on April 10, 2018. On April 27, 2018, Plaintiff recorded the grant deeds giving him ownership of the property. (*Id*. at 75–82.) Before then, John M. Smith was the owner of record, though it appears that Plaintiff has been in receipt of the County's tax bill for the property since approximately 2009. (*See* ECF No. 48, at 36–60.)

Plaintiff's tax receipts demonstrate an early history of making tax payments for the property. However, after Defendants issued the abatement costs as a lien on the property and added it to Plaintiff's property taxes, Plaintiff fell behind on his taxes. To collect, the San Diego County Treasurer-Tax Collector's Office scheduled a tax sale of the property for May 4, 2018. That sale was canceled after Plaintiff filed for bankruptcy on April 30, 2018. (ECF No. 45, at 4, 6.) On September 10, 2018, Plaintiff's bankruptcy petition was dismissed pursuant to Plaintiff's request. (ECF No. 45, at 4.) Thereafter, a notice was mailed out on March 11, 2019, informing Plaintiff that the property would be listed for sale at public auction on April 26, 2019. (*Id*. at 6.)

**B. Procedural Background**

After filing the original complaint in April of 2018, Plaintiff submitted a first amended complaint ("FAC") on December 17, 2018. In that complaint, Plaintiff pursued claims against the County, the County Board of Supervisors, several employee defendants, and Advance Demolition. Plaintiff asserted a deluge of causes of action, maintaining, *inter alia*, allegations under 42 U.S.C. § 1983, denial of due process and the equal protection of the laws, civil RICO (for wire and mail fraud), and state law claims of

4

perjury, quiet title, perjury, "accounting," "fraud and swindle," among others. Defendants moved to dismiss, and on April 24, 2019, the Court granted in part and denied in part Defendants' motion to dismiss Plaintiff's FAC. (ECF No. 46.) As relevant to the second iteration of Plaintiff's complaint, the Court denied dismissal pursuant to Defendants' state law immunity and res judicata / collateral estoppel arguments. The Court granted dismissal as to Plaintiff's § 1983 claims for being untimely, but granted leave to amend in case he could point to any more recent injury resulting from Defendants' alleged conduct which would clear the statute of limitations.

Plaintiff submitted his second amended complaint on May 22, 2019. (ECF No. 48.) The SAC largely repeats the same factual allegations and causes of action as his first. Like the FAC, the SAC is prolix and difficult to comprehend. Notwithstanding the laundry list of causes of action ascribed to Defendants' conduct, all of the claims in the SAC are predicated on Plaintiff's theory that the Defendants contravened Constitutional due process and property right guarantees by engaging in a nefarious conspiracy to institute abatement proceedings against a deceased individual, Mr. Smith.

Plaintiff's theory is that Defendants had full knowledge that Mr. Smith (the property owner of record until 2018), passed away in 2003, but nonetheless instituted and executed the abatement proceedings against the property under Mr. Smith's name. Plaintiff alleges that Defendants had notice that Plaintiff was the true owner because he had been paying property taxes on the property. Naming Mr. Smith, then, evinced Defendants' fraudulent plot to "collect an illegal debt by writing false claims against Plaintiff's real property by using a deceased person." (ECF No. 48, at 19.)

On June 6, 2019, Defendants filed a motion to dismiss the SAC, asserting qualified immunity, statute of limitations, state-law immunity, and res judicata and collateral estoppel. (ECF No. 49). Plaintiff opposed the motion (ECF No. 53) and Defendants filed a reply. (ECF No. 53.)

On July 2, 2019, Plaintiff filed an untimely second response brief. (ECF No. 55.) The Court noted the discrepancy but allowed the filing as a supplement to the original

response since it did not prejudice the Defendants nor assert any new legal theories to counter Defendants motion to dismiss. Indeed, this supplementary document was merely a cosmetic correction of Plaintiff's original response. On July 15, 2019, Plaintiff filed another untimely document with respect to Defendants' motion to dismiss. (ECF No. 57.) As this document did not prejudice the Defendants, and in light of Plaintiff's pro se status, the Court construed the filing as sur-reply.

## II. Defendants' motion to dismiss

### A. Legal Standard for Rule 12(b)(6)

A complaint must contain only a "short and plain statement of the claim showing that the pleader is entitled to relief," FED. R. CIV. P. 8(a)(2), not "detailed factual allegations," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). But this rule demands more than unadorned accusations; "sufficient factual matter" must make a claim at least plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A party may thus move to dismiss for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). The motion may be granted only if the complaint lacks a "cognizable legal theory" or if its factual allegations do not support a cognizable legal theory. *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1122 (9th Cir. 2013).

In making this context-specific evaluation, this court "must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party." *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). This rule does not apply to "'a legal conclusion couched as a factual allegation,'" *Papasan v. Allain*, 478 U.S. 265, 286 (1986), nor to "allegations that contradict matters properly subject to judicial notice" or to material attached to or incorporated by reference into the complaint. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988–89 (9th Cir. 2001). In addition, Rule 12(b)(6) does not immunize from scrutiny assertions that are "merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.), *opinion amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001).

6

## B. Judicial Notice upon a Rule 12(b)(6) motion

In deciding a motion to dismiss, "courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Outdoor Media Group, Inc. v. City of Beaumont*, 506 F.3d 895, 899–900 (9th Cir. 2007) (citing *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007)). Rule 12(d) addresses the use of materials which are outside the pleadings in motions to dismiss under Rule 12(b)(6). FED. R. CIV. P. 12(d); *see also Olsen v. Idaho State Bd. of Medicine*, 363 F.3d 916, 922 (9th Cir. 2004). When such materials are presented, the motion is treated as one for summary judgment. *Olsen*, 363 F.3d at 922. However, certain additional materials may be considered without converting the motion to dismiss into a motion for summary judgment.

In this case, Defendants have sought judicial notice of several documents pertaining to their efforts to abate Plaintiff's property, various state court and administrative agency filings and decisions relating to the parties' ongoing dispute about the abatement, and a quitclaim deed and grant deed of the property recorded on April 27, 2018. (ECF No. 49-2.) Likewise, Plaintiff has filed a number of exhibits; some of these repeat the documents proffered by Defendants, and some are unique to his filings. The Court will consider all of these items.

A court may take judicial notice of court filings and other matters of public record. *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006). Thus, the abatement warrants against the property, the filings, and opinions rendered in connection with Plaintiff's unsuccessful administrative appeals, the orders on his state-court suits and his application for a preliminary injunction—are appropriately considered by this court. *See, e.g., Mechammil v. City of San Jacinto*, No. CV 1301380JGBSPX, 2013 WL 12204187, at *3 (C.D. Cal. Nov. 12, 2013), *vacated in part on other grounds*, 653 F. App'x 562 (9th Cir. 2016) (taking judicial notice of notices of pendency of nuisance abatement proceeding); *Hardy v. Cty. of El Dorado*, No. CIV.S-07-0799RRBEFB, 2008 WL 268966, at *5 (E.D. Cal. Jan. 29, 2008) (taking note of

7

abatement hearing transcripts and an order from the zoning administrator because "[j]udicial notice is properly taken of transcripts, orders and decisions made by other courts or administrative agencies"). The property deeds at issue are similarly subject to judicial notice. Both the quitclaim and grant deeds have reference numbers from the San Diego County Recorder indicating that they were in fact recorded. *Lee v. Wells Fargo Bank*, No. EDCV151313VAPKKX, 2015 WL 9269433, at *2 (C.D. Cal. Dec. 17, 2015) (taking judicial notice of quitclaim and grant deeds).

Further, the documents unique to Plaintiff's filings are either attached to his FAC, referenced in his FAC, or otherwise "integral" to his complaint. They are also properly considered. *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) ("A court may . . . consider . . . documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment."); *Mulinix v. Unifund CCR Partners*, No. 07-1629DMS, 2008 WL 2001747 (S.D. Cal. May 5, 2008) ("A complaint is deemed to include materials incorporated by reference and documents that, although not incorporated by reference, are 'integral' to the complaint.").

### C. Discussion

Defendants have moved to dismiss the SAC on four grounds. First, Defendants contend that Plaintiff's § 1983 claims are untimely, and second, that they are in any event unavailing because the employee defendants are entitled to qualified immunity. Defendants also argue that Plaintiff's state law claim are either inadequately stated or disallowed under various state law immunities. Finally, Defendants seek to dismiss the entirety of the action as barred by the principles of res judicata and collateral estoppel.

The Court will discuss these arguments in turn. It ultimately concludes that dismissal is proper under all but the first argument.[1]

---

[1] Although Defendants' motion to dismiss does not specifically address each and every single cause of action in the SAC, Defendants' arguments more than amply cover all of Plaintiff's claims. As

8

### 1. Statute of Limitations

Defendants argue that the statute of limitations bars Plaintiff's § 1983 claims. "For actions under 42 U.S.C. § 1983, courts apply the forum state's statute of limitations for personal injury actions." *Jones v. Blanas*, 393 F.3d 918, 927 (9th Cir. 2004) (citing *Fink v. Shedler*, 192 F.3d 911, 914 (9th Cir. 1999)). California has a two-year statute of limitations for personal injury actions. CAL. CIV. PROC. CODE § 335.1.

Defendants contend that Plaintiff's original complaint, filed in 2018, lies outside of the two-year limitations period. They point out that the last of Defendants' allegedly unlawful actions occurred, at the latest, during the June 2015 administrative appeal hearing, which would mean Plaintiff needed to sue no later than June 2017. However, Plaintiff, in his opposition, identifies a tax sale scheduled for July 12, 2019 as the last distinct wrong done to him, which is well within the statute of limitations. (ECF No. 52.) Defendants do not address this July 12, 2019 date in their reply.

The Court declines to make a determination on the statute of limitations defense in this procedural posture. Ordinarily, the Court may not rely on facts asserted for the first time in opposition papers to a motion to dismiss, and given Defendants' failure to opine on Plaintiff's belated assertion of a July 12, 2019 tax sale, the Court cannot rule without the benefit of adversarial briefing. Moreover, there is no need to decide the statute of limitations issue; even assuming that Plaintiff's § 1983 claims are timely, they may not be brought in light of the Court's determinations *infra* that the employee defendants are entitled to qualified immunity and that the County is shielded by res judicata principles.

---

observed *supra*, Plaintiff's SAC is needlessly convoluted, and all of his causes of action are premised on his factual allegation of a knowing conspiracy by Defendants to use a dead man's name in abatement proceedings. In other words, all of Plaintiff's allegations rise and fall with his claim that he was denied due process as a result of Mr. Smith's name appearing on County documents. Defendants' motion amply addresses both the legal theory and factual claims underpinning Plaintiff's assertion. Thus, while the Court may discuss the Defendants' dismissal arguments as particularly directed toward specific claims—i.e., the state law tax claims, or the § 1983 constitutional claims—it should be understood that the Court's ultimately conclusion to grant the motion to dismiss pertains to the entirety of the assertions in Plaintiff's SAC.

## 2. Qualified Immunity Under § 1983

The employee defendants have invoked qualified immunity as to Plaintiff's § 1983 claims.[2]

### a. Legal Standard

"Qualified immunity shields government actors from civil liability under 42 U.S.C. § 1983 if 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1066 (9th Cir. 2016) (en banc) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). It "protects 'all but the plainly incompetent or those who knowingly violate the law,'" *Mueller v. Auker*, 576 F.3d 979, 992 (9th Cir. 2009) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)), and protects an officer from suit when he or she "makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004).

"When a defendant asserts qualified immunity . . . the burden shifts to the Plaintiff to show that: (1) the defendant violated a constitutional right and (2) the constitutional right was clearly established." *Pearson v. Callahan*, 555 U.S. 223, 232–236 (2009). "[A] right is clearly established when the 'contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Castro*, 833 F.3d at 1067 (quoting *Serrano v. Francis*, 345 F.3d 1071, 1077 (9th Cir. 2003)). "This inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition." *Mueller*, 576 F.3d at 994 (internal quotation marks and citation omitted). "[T]he clearly established law must be 'particularized' to the facts of the case." *White v. Pauly*, 137 S.Ct. 548, 552 (2017) (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

### b. Discussion

---

[2] "A municipality is not entitled to assert the defense of qualified immunity." *Huskey v. City of San Jose*, 204 F.3d 893, 902 (9th Cir. 2000) (citing *Owen v. City of Indep.*, 445 U.S. 622, 638 (1980)).

In this case, the FAC asserts violations of the 14th Amendment arising from the Defendants' efforts to abate his property. Specifically, Plaintiff alleges § 1983 liability stemming from Defendants' use of an abatement warrant allegedly procured by fraud—i.e., the institution of proceedings against Mr. Smith. The void abatement, Plaintiff claims, led to a willful trespass on his property and an unlawful seizure of $300,000 in chattel. (ECF No. 51, at 13–14.) He further asserts that Defendants lied to him about the location of his chattels, and that they committed perjury at the state court to perfect their fraud scheme. (*Id*.) Plaintiff further alleges that no immunity can lie because Defendants knowingly and intentionally plotted their conspiracy. (*Id*.)

Upon the employee defendants' invocation of qualified immunity, the burden shifted to Plaintiff to demonstrate both (1) that a constitutional violation occurred, and (2) that the violation was of such a flagrant nature that it was prohibited as a matter of clearly-established law. However, Plaintiff failed to address either of these two issues in his opposition motion.

First, as Defendants point out, Plaintiff has offered no evidence that he was denied due process during the abatement of his property. The only reed upon which Plaintiff's 14th Amendment claim rests is that the abatement notices and proceedings were void and fraudulent because they named the deceased Mr. Smith as the property owner. But the judicially-noticeable state court records squarely contradict Plaintiff's claim that Defendants acted in bad faith and with malice in naming Mr. Smith. Indeed, it was Plaintiff who devised the fiction that Mr. Smith was still alive during the course of the abatement proceedings. To wit, on May 13, 2014, when questioned about his standing to challenge the abatement, Plaintiff represented that to the County Hearing Officer that he was appearing in Mr. Smith's place, and that Plaintiff had full authority to bind Mr. Smith, who Plaintiff indicated was the record property owner. Moreover, as recently as July 2014, Plaintiff submitted legal motions which bore Mr. Smith's signature. The employee defendants might be forgiven for thinking that Mr. Smith was alive and properly subject to the abatement notices and proceedings.

In any event, Plaintiff cannot refute the clear documentary record of all the due process afforded him. The County's decade-long attempt to abate the nuisance was known to Plaintiff, and during this time, Defendants gave Plaintiff every possible opportunity to object and abate the nuisance on his own before they moved forward with an abatement warrant. Indeed, Plaintiff filed numerous motions and appeals with the County and as a result of those filings, Plaintiff was granted hearings during which he was permitted to offer both argument and evidence. Thus, the Court concludes that Plaintiff failed to bear his burden to allege a Constitutional violation.

Even assuming *arguendo* that Defendants had committed a constitutional wrong, Plaintiff is stymied by the second prong of the qualified immunity analysis. To prevail with respect to the second prong, "plaintiffs must generally identify a case where a defendant acting under similar circumstances was held to have violated the [constitutional provision underlying a claim]." *Felarca v. Birgeneau*, 891 F.3d 809, 822 (9th Cir. 2018); *see also Reese v. Cty. of Sacramento*, 888 F.3d 1030, 1038–39 (9th Cir. 2018) (defendant entitled to qualified immunity where plaintiff "has not identified any sufficiently analogous cases" and "none of [plaintiff]'s cited cases demonstrate that the contours of his Fourth Amendment right were sufficiently clear" and "[plaintiff] points to no case that considered the relevant question"). Clearly established law may not be defined "at a high level of generality," rather; it must be "particularized" to the facts of the case. *White*, 137 S. Ct. at 552 (citations and internal quotation marks omitted).

Although it was his burden, Plaintiff has not articulated any clearly-established law prohibiting conduct analogous to that alleged of the Defendants. Plaintiff has altogether failed to identify any cases where officers were found liable for executing abatement proceedings against a property where the owner—though not named in the proceeding—received notice of all applicable hearings dates and actions, and was granted opportunities to contest and testify thereto. Nor does the Court, drawing on its own "full knowledge" of relevant precedent, believe that any such clearly established law exists. *Brown v. Grinder*, No. 2:13-CV-01007KJMKJN, 2019 WL 280296, at *15 (E.D. Cal.

12

Jan. 22, 2019) (courts have discretion to refer to their own knowledge of relevant case law in assessing second prong).

The employee defendants are entitled to qualified immunity as to Plaintiff's § 1983 claims.

### 3. State Law Arguments

Defendants' defenses as to Plaintiff's state law claims are two-fold. First, Defendants claim that they are absolutely immune from all the SAC's state law abatement and tax lien allegations under various provisions of the California Government Code. Second, Defendants argue that Plaintiff's allegations of fraud and conspiracy are contradicted by the record.

### i. Tax Lien

Defendants argue that any liabilities arising from the Defendants' imposition of the tax lien on his property are precluded by the pay-first, sue later rule, and immunity provisions in the California Government Code.

First, Defendants claim that any attempt to dispute the tax on the property would first require Plaintiff to pay the amount due before litigating. (ECF No. 49-1, at 10.) For this proposition, Defendants rely on the opinion in *Rickley*, which held that for "taxpayers who dispute that any tax is owed the rule is 'pay first, litigate later'." *Rickley v. Cty. of Los Angeles*, 114 Cal. App. 4th 1002, 1013–14 (2004) (citations omitted). Plaintiff has yet to pay his property taxes (ECF No. 48, at 7–8), and thus, Defendants contend, he cannot file suit until he does so and exhausts administrative remedies. (ECF No. 49-1, at 10–11.)

In the alternative, Defendants also reassert an immunity provision which they invoked with respect to their previous motion to dismiss the FAC; i.e., California Government Code section 860.2. Section 860.2 states:

> Neither a public entity nor a public employee is liable for an injury caused by: (a) Instituting any judicial or administrative proceeding or action for or incidental to the assessment or collection of a tax [; or] (b) An act or omission in the interpretation of application of any law relating to a tax.

13

The Court originally declined to apply Section 860.2 with respect to Plaintiff's FAC because Defendants offered no briefing in support of applying Section 860.2 in the face of allegations of knowing or willful unlawful action. (ECF No. 46, at 10–12.)

Defendants' new motion to dismiss, however, offers *Rickley* for the proposition that Section 860.2 applies even where the officials in question knew that the tax liens placed were invalid or unjustified. Immunity was granted notwithstanding any asserted knowledge of impropriety, because, as the court reasoned, "[i]t is of no consequence that the County acted intentionally or otherwise. . . Such liens are matters of public record and respondent cannot overcome the immunity conferred on the County." *Rickley*, 114 Cal. App. 4th at 1005.

In light of *Rickley*, the Court is satisfied that Defendants are immune from litigation with respect to the tax lien claims—both because Plaintiff had an obligation to pay first before suit, and also because Section 860.2 is applicable.

### ii. Executing the Abatement Warrant

Defendants argue that Plaintiff's claims as to the execution of the warrant are also barred by California statute. They cite California Government Code section 821.8, which "provides that public employees are not liable for entry onto property where the entry is under the expressed or implied authority of law." *Ogborn v. City of Lancaster*, 101 Cal. App. 4th 448, 462 (2002). Plaintiff has not provided any case law to demonstrate that Defendants' interpretation of the state law provision is inaccurate. The Court thus grants the Defendants immunity regarding the state claims stemming from the abatement warrant and its execution.

### iii. Conspiracy and Fraud

Defendants do not raise an immunity defense to Plaintiff's conspiracy and fraud claims, but contend that they are inadequately pled, or otherwise contradicted by judicially-noticeable documents.

14

As previously discussed with respect to the § 1983 claims, the Court again finds that Plaintiff has not stated facts plausibly alleging that Defendants hatched a nefarious plot to divest Plaintiff of his property. Given the judicially-noticed documents, and Plaintiff's own obfuscating representations and filings with the County Hearing Officers, the Court would have to believe that Plaintiff was in cahoots with the Defendants in developing the very fiction that Plaintiff alleged was used against him.

Such logic stretches reason and thus can be dismissed as failing the plausibility test set out in *Iqbal*. *Iqbal*, 556 U.S. at 678.

### 3. Res Judicata and Collateral Estoppel

Finally, Defendants argue that they are immune from further litigation on all Plaintiff's claims due to claim preclusion and collateral estoppel. Res judicata, also known as claim preclusion, prevents litigation over causes of action between the same parties, or parties who are in privity, which they have previously litigated. *Headwaters Inc. v. U.S. Forest Serv.*, 399 F.3d 1047, 1051–52 (9th Cir. 2005). The purpose behind the doctrine is to relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, prevent inconsistent decisions, and encourage reliance on prior adjudication. *Montana v. United States*, 440 U.S. 147, 153–54 (1979).

For a defendant to prevail on a res judicata defense, they must show: (1) the same parties, or their privities, were involved in a prior litigation; (2) the preceding litigation involved the same claim or cause of action as the second suit; and (3) the prior litigation was terminated by a final judgment on the merits. *See Blonder-Tongue Lab., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 323–24 (1971). The prior litigation need not take place in court; it may reside in an administrative adjudication. *Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 107 (1991). In the Ninth Circuit, courts assess the preclusive effect of any given administrative adjudication with reference to the availability of judicial review. *See Plain v. McCabe*, 797 F.2d 713 (9th Cir. 1986).

Defendants argue that Plaintiff's claims are barred because they either had already been raised and denied in a previous administrative proceeding or were waived because

Plaintiff neglected to raise the claims in a prior proceeding. (ECF No. 49-1, at 6–8.) Defendants rely on *Astoria* to argue that the determinations reached during the June 4, 2015 administrative hearing were preclusive, as Plaintiff made or should have made all his claims of improper procedure, fraudulent proceedings against Mr. Smith, etc., at that juncture. (ECF No. 49-1, at 6–8.) The Supreme Court in *Astoria* found that "[w]hen an administrative agency is acting in a judicial capacity and resolves disputes of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply res judicata to enforce repose." *Astoria*, 501 U.S. at 107.

Defendants argue these hearings are just the sort of actions taken in a judicial capacity that should result in res judicata and collateral estoppel. Defendants point to San Diego Ordinance Section 16.209 to illustrate the judicial characteristics of the June 4, 2015 administrative proceedings. The County's proceedings permitted Plaintiff to be represented by legal counsel, call and examine witnesses, introduce exhibits, cross-examine opposing witnesses, and impeach witnesses. (ECF No. 49-1, at 11.) Defendants further contend that Plaintiff did not have to follow strict rules of evidence. (*Id.*) Defendants urge that despite the opportunity to put forward any and all evidence and claims at these hearings, Plaintiff failed to prove his case. Further, when the hearing concluded with instructions advising Plaintiff of his right to pursue judicial review, Plaintiff failed to make a timely appeal. (*See* ECF No. 49-2, at 49 ("Appellant has a right to file a lawsuit challenging this decision within 90 days after this decision becomes final, all as defined by the California Code of Civil Procedure.").)

Plaintiff responds to these arguments by reprising his claims in the SAC, arguing the proceedings are invalid because they were based on fraud and conspiracy. (ECF No. 52, at 12–13). He does not engage in any meaningful way with Defendants' assertions that the administrative hearings ought to be given preclusive force, or provide any explanation why he did not raise his present arguments in 2015.

The Court finds that the administrative hearings in this case "ha[ve] the essential procedural characteristics of a court, . . . [their] determinations should be accorded the same finality that is accorded the judgment of a court." *Univ. of Tenn. v. Elliott*, 478 U.S. 788, 798 n.6 (1986). Plaintiff has not brought forth claims or judicially noticed material that he was denied the ability to present crucial evidence, question witnesses, or challenge the evidence of the Defendants at the administrative hearings. Instead, he claims that the Court should ignore these proceedings because the Defendants were conspiring against him and thus none of the administrative hearings are legitimate. Having discerned no plausible allegations of conspiracy and fraud, the Court finds res judicata proper and gives due weight to the administrative determinations.

Lastly, res judicata applies to all Defendants in this case. Although the prior administrative actions were not brought against all the parties in the case at bar, the parties unique to the instant action—i.e., the employee defendants—are in privity with parties previously named. Employees are in privity with their employer for the purposes of res judicata, and thus Plaintiff should have included the employees in his original actions. *See Wright v. City of Los Angeles*, No. CV 11–0158 AHM (RZx), 2012 WL 1319919, at *5 (C.D. Cal. April 17, 2012) (finding employees of various Los Angeles agencies were in privity for purposes of res judicata with their employers). Thus, the preclusive effect of the earlier litigation against the County envelops claims asserted against its employees in the present matter.

This Court, therefore, finds that the administrative hearings are binding and preclude the instant litigation—both as to claims that were brought in the administrative proceedings, and those that could have been.[3]

### III. Conclusion

---

[3] The Ninth Circuit has specifically found that administrative agencies decisions can apply to § 1983 claims. *See Miller v. Cty. of Santa Cruz*, 39 F.3d 1030, 1031–32 (9th Cir. 1994) (holding that a civil service administrative proceeding that provided adequate opportunity to litigate a wrongful termination claim had a preclusive effect on a plaintiff who forwent his right to appeal).

To conclude, the Court has reached several determinations with respect to Defendants' motion to dismiss. First, Plaintiff's § 1983 claims against the employee defendants are precluded by qualified immunity. Second, his state law tax lien claims are barred by statute, and his claims for state law trespass, quiet title, bad faith, etc., are factually implausible given judicially noticeable documents squarely belying any assertion that Defendants conspired to use Mr. Smith as a means to deprive Plaintiff of his property. Third, all of Plaintiff's SAC claims—both federal and state law—are barred as a matter of res judicata, and independently undermined by the record demonstrating no conspiracy by Defendants to maliciously deprive him of property. As a result, Defendants' motion to dismiss is **GRANTED**. (ECF No. 49.)

The Court's discretion to deny or grant leave to amend is "particularly broad where a plaintiff has previously amended the complaint." *Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989). Because Plaintiff's assertion of a fraudulent scheme is irredeemably contradicted by judicially-noticeable documents, the Court determines that amendment would be futile, and orders that dismissal be with **PREJUDICE**. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992) (affirming dismissal with prejudice where district court had instructed pro se plaintiff regarding deficiencies in prior order dismissing claim with leave to amend).

The motion hearing set for this matter on August 30, 2019 is hereby **VACATED**.

The Clerk is directed to enter judgment and close the case.

**IT IS SO ORDERED.**

Dated: August 26, 2019

*[signature]*

Hon. Gonzalo P. Curiel
United States District Judge

18

3:18-CV-711-GPC-NLS